**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **CAUSE NO.: 1:16-cr-00037-TWP-DKL-1** |
| **vs.** | ) |
| | ) |
| **EUGENE LAWMAN,** | ) |
| | ) |
| **Defendant.** | ) |

**DEFENDANT'S SENTENCING MEMORANDUM**

Eugene Lawman, by counsel Kathleen M. Sweeney and Charles C. Hayes, files the following Sentencing Memorandum setting out the factors that the court should consider in determining what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. § 3553(a).

*Proposed Sentence*

By virtue of these directives and how they relate to Gene Lawman, a sufficient sentence in compliance with § 3553(a)'s mandate is two years probation, an order of restitution, and no fines or costs. Alternatively, a sentence of probation with a short term of home detention, and an order of restitution, and no fines or costs.

*Procedural Background*

Gene appears before this court to plead guilty to providing kickbacks to Medicaid patients in violation of 42 U.S.C. § 1320a-7b(b)(2).

*Personal Background*[1]

### GENE'S FAMILY, EDUCATION AND CAREER PATH

**Overview**

Gene Lawman, age 78, was born in Tipton, Indiana on February 3, 1938 to Bev and Effie Lawman.  He grew up with seven (7) siblings, the son of a tenant farmer and stay-at-home mother. Gene worked the farm growing up helping his father handle the many responsibilities of growing grain and raising cattle. The family sent Gene to live with his widowed grandmother when he was eight (8) years old in Burlington, Indiana on her farm. Living there until he was 16 years old, Gene helped his grandmother with the farm.

At age 16, Gene and his grandmother moved in with his parents, who now lived in Kokomo. At age 18, Gene enlisted in the Army and was honorably discharged. At age 78, this is his first contact with the criminal justice system.

In 1970, Gene married his wife Ava and they remain married and actively involved in their church and community. According to Stephen Waddell, Gene and Ava acted as mentors, friends and second parents to him. He lived with

---

[1]This information is obtained through interviews and letters of support submitted by Stephen Waddell, Bobby Carter, Glenn Bryan, Philip and Elizabeth Price, Ronald Gard, Jesse Reece, Zola Smith and Ava Lawman.

them in Kokomo prior to joining the Marines and he felt their love, support and kinship with him. Stephen has seen Gene in roles as diverse as bus driver to church trustee. In each instance, Gene treated all with kindness and with integrity.

Likewise Bobby Carter, pastor of the Zion Tabernacle, where Gene has been active for at least 10 years, attests to his strength of character. Another church member, Glenn Bryan describes his dealings with Gene as honest and generous. Glenn has known Gene for 45 years and witnessed Gene's dedication to help others. According to Gene and Ava the Zion community is a family and they consider their service to the church community an important and crucial part of their life.

With only an eight grade education, Gene has been able to obtain and keep a number of positions over the years having been employed as a bus driver and cab driver. He worked hard at these positions, had an excellent work record and was able to purchase a modest home in which he lives in today.

Ava describes Gene as a thoughtful and loyal husband. According to Ava, Gene is devastated over his prosecution and will do everything in his power to make restitution. She has always admired Gene's commitment to others.

In 2012, Gene and Ava started Kokomo Cab. The cab company continues today where Gene is a driver. He makes trips across northern Indiana and parts of the southern Indiana. Although the company has been successful on paper, Gene has used the proceeds to pay his drivers a living wage and

3

maintain the fleet of vehicles. Gene has never taken a salary or any profits from the company even though he was entitled to do so.

Gene helped methadone patients by making the payments on their medications typically providing them with $15.00 to use towards each dose of medication. Gene also received their business by transporting them daily to the methadone clinic in Indianapolis and submitting claims for reimbursement to Medicaid. These are kickbacks and Gene accepts responsibility for his actions.

These kickbacks involved four patients of Gene's large client base. To that end not only will he be required to repay Medicaid in the amount of $159,120.01, he shall be barred from participating in Medicaid or Medicare programs.

Gene started the company and successfully participated in a city program providing service to lower income residents. A number of city leaders asked Gene to consider hiring convicted felons as part of their re-entry into the community. Gene honored the requests and is proud of his employees. Zola Smith recounts that she was a convicted felon with no job hopes when Gene hired her. She has worked at Kokomo Cab successfully for three (3) years and considers Gene and Ava as her family. Similarly another cab driver related that because of Gene's decision to hire him despite his felony conviction, he was able to stay off drugs and gain custody of his 11 year old daughter. He too considers Gene as family.

4

Gene has had a lifelong trait in helping people in need.

Throughout his life, Gene has been a devoted husband, a thoughtful mentor, a humble friend, and by all accounts, a true gentleman.

## Sentence

### Options:

| | |
|---|---|
| Advisory Guideline: | Total offense level of 13 (with 5K1) and a criminal history category of I, the range is 12-18 months. |
| Sufficient Sentence: | 2 years probation and restitution |

## Legal Analysis

### Standard

To avoid procedural error, sentencing judges must correctly calculate the guidelines range, evaluate the factors in 18 U.S.C. § 3553(a), and rely on properly supported facts. *United States v. Jackson*, 547 F.3d 786, 792 (7th Cir. 2008). Judges must also "adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing." *Gall v. United States*, 552 U.S. 38, 128 S. Ct. 586, 597, 169 L. Ed. 2d 445 (2007).

A district court may not presume that the guideline sentence is the correct one. *Rita v. United States*, 551 U.S. 338, 351 (2007). This court has discretion to impose a sentence outside the guidelines range if its consideration of the factors in 18 U.S.C. § 3553(a) persuade it to do so. *Gall*, 552 U.S. at 50. The sentencing judge does not need extraordinary circumstances to impose a

5

non-Guidelines sentence. *Id.* Nor is the sentencing judge required to find more compelling reasons merely because there might be a large deviation from the applicable guideline range.  Moreover, the court is not required to address every § 3553(a) factor individually or to articulate conclusions as to each one. *United States v. Sainz-Preciado*, 566 F.3d 708, 716 (7th Cir. 2009).

**The Advisory Guideline Range:**

"Congress established the Sentencing Commission to formulate and constantly refine national sentencing standards." *Rita,* 551 U.S. at  347-350 (U.S. 2007). In that institutional role, the Sentencing Commission "has the capacity courts lack to base its determinations on empirical data and national experience, guided by a professional staff with appropriate expertise.'" *Kimbrough v. United States*, 552 U.S. 85, 108-109(U.S.2007) (quoting *United States v. Pruitt*, 502 F.3d 1154, 1171(10th Cir. 2007).

"However, when Guidelines are not the result of 'the Commission's exercise of its characteristic institutional role,' such as when they are not based on an empirical approach, but are instead keyed to or guided by statutory directives, a court is not presented with the 'ordinary case,' in which "the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *United States v. Baird*, 580 F. Supp. 2d 889, 892(D. Neb.2008)(quoting *Kimbrough, Rita, Gall*).

6

"In cases involving application of Guidelines that 'do not exemplify the Commission's exercise of its characteristic institutional role,' it is 'not an abuse of discretion for a district court to conclude when sentencing a particular defendant' that application of the guideline 'yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes even in a mine-run case.'

In short, the court is simply required to impose a sentence sufficient but not greater than necessary to comply with the purposes of sentencing.

**The 18 U.S.C. § 3553(a) factors which the court considers are:**

a. The history and characteristics of the defendant and the nature and circumstances of the offense and pursuant to 18 U.S.C. § 3553(a)(1);

b. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense (18 U.S.C. § 3553(a)(2)(A));

c. To afford adequate deterrence to criminal conduct (18 U.S.C. § 3553(a)(2)(B));

d. To protect the public from further crimes of the defendant (18 U.S.C. § 3553(a)(2)(C));

e. To provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner (18 U.S.C. § 3553(a)(2)(D));

f. To avoid unwarranted sentencing disparities among defendants (18 U.S.C. § 3553(a)(6)); and

g. To provide restitution to any victims of the offense (18 U.S.C. § 3553(a)(7)).

**Exhibits proffered in support of sentence outside the Guidelines:**

Letters of support filed separately pursuant to Local Rule**;**
Exhibit A: William Hockersmith Information;

7

Exhibit B-William Hockersmith Judgment.

**Analysis of § 3553(a) factors**

**Gene's history and character**

Gene is a unique offender.  His lifelong desire to help others walked him right across the line into committing illegal acts. He has admitted his wrongdoing and his grave misjudgments.  Even with his admitted transgressions, his family of friends at Zion church and most importantly his employees continue to care for and support him. Gene has made it clear to the people he loves that he does not want to repeat this offense. He will work as a driver until he has repaid the Medicaid dollars.

Gene is 78 years old and has no prior criminal history. Although age is a discouraged factor for variance in the Guidelines, the statistical research on recidivism indicates that age is a significant factor in predicting recidivism. The U.S. Department of Justice has found that persons convicted of crimes over the age of 55 recidivate at a rate of only 2%, which is considerably less than the recidivism rate for those under 30, which is more than 50%. (U.S. Department of Justice, Bureau of Justice Statistics, Trends in State Parole 1999-2000.)

The Department of Justice considers inmates over the age of fifty (50) to be "elderly," and to require management and medical care that is more specialized and labor-intensive than that needed for other inmates. (Correctional Health Care: Addressing the Needs of Elderly, Chronically Ill, and Terminally Ill Inmates, U.S. Department of Justice, National Institute of

Corrections, 2004 edition, pp 7-13.) The report also notes that the stress of prison life tends to cause inmates to age more quickly than they would otherwise. *Id.* at 9. Incarcerating Gene at this age after a life long history of law abiding behavior would seem to be a decision that would not benefit the community or Gene. He continues to operate a legitimate company that employs people who need their jobs.

### Nature and circumstances of offenses

*To reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.*

Paying kickbacks is a serious offense. However in this case, Gene in violating the law had sought to help others. It is no doubt that he and his company benefitted from the Medicaid business. Yet in the commission of this crime, no one sustained any physical or emotional harm, patients were not denied critical services and were in fact provided transportation in a timely and efficient manner.  Gene's disbarment from the Medicaid and Medicare programs will be an adequate deterrence. In a similar case William Hockersmith, also prosecuted in the Southern District of Indiana, United, the defendant received a sentence of two years probation. See Exhibit A. Hockersmith also operated a cab business and took payments from clients. This case appears to be similar to Gene's and so that a sentence of probation would be in line with other cases in the district.

**Probation is a sufficient sentence**

With his disbarment from the Medicaid and Medicare programs, restitution becomes a singularly important component of any sentence. With a sentence of probation, Gene can continue to work and make payments toward the restitution. If he is incarcerated, he will not be able to continue to operate Kokomo Cab, he will lose the business, and his job as a driver. Probation will subject Gene to court supervision, allow him to work, allow him to continue to serve his community and adequately punish him for his wrongful conduct.

Respectfully submitted,

SWEENEY HAYES, LLC

*/s/ Kathleen M. Sweeney*
Kathleen M. Sweeney
141 E. Washington St. Ste. 225
Indianapolis IN 46204
T: 317-491-1050; F: 317-491-1043
ksween@gmail.com

**Certificate of Service**

I hereby certify that on May 9, 2016, a copy of the foregoing was filed electronically.  Notice of this filing will be sent to the parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

/s/ *Kathleen M. Sweeney*
Kathleen M. Sweeney

141 E. Washington St. Ste. 225
Indianapolis IN 46204
T: 317-491-1050; F: 317-491-1043
Ksween@gmail.com

10